Good morning, Your Honors. Scott Zarin for the appellant Carl Turecek. Mr. Zarin, just two clarified questions before you get started. I take it there is no new ordinance yet? Is that right? Not that I'm aware of, no. The county may correct me. There's no new ordinance, no. Okay. And the second one is, is the orchard application still pending? It is not. It has been denied based on administrative reasons. Based on? Administrative reasons. The orchard application? The application for development, the use permit. I understood there were two. There were two. There was the first application, which was denied on, what, March? May of 2003, I believe. Okay. Yeah. Okay. For administrative reasons. Then I understood from the district court's opinion that there was another application to do an orchard? There's another application there is, Your Honor, but that application does not affect this appeal. Well, then, what's, what is there, what are we doing here? I believe that's for a different parcel of land. Well, then my question is, what are we doing here? If the appeal has been denied on administrative reasons, which had nothing to do with the Federal standard or the RPO standard, and if there is no other application pending, what are we doing here? If, Judge, if the application, the application was denied for administrative reasons, and if it, because the appellant did not submit paperwork and documents that the county requested, if, if, if, if, if, if, if, if, if, if, if, if, if, if, if, if the appeal is denied on administrative reasons, I thought there was an assertion that Teresek had refiled the permit application. That's what he just said, wasn't pending. I'm sorry, Your Honor, you're correct. There has been a refiling of the application, in which case the issue currently before this Court is still, is still relevant. Well, where is that?  The first application was denied while the matter was pending in the district court. Then the district court, for administrative reasons, then the district court said there had been some application filed for, for an orchard, as I recall. Okay. I see that, too, but I do not have the second application before me. Well, I mean, does it exist? Is it pending? What's pending now? I believe you're correct. There is a second application pending. Well, look, you know, you're invoking the jurisdiction of this Court and asking us to decide a fairly significant issue of Federal preemption. And we can't just go do it for fun. I mean, what effect is it going to, is our decision going to have on anything? Assuming there is a second application pending, and I believe that there is. Well, we can't just assume it. I would ask the County at this point, or do you have a copy of the second application that's pending? Okay. I do not have a copy of that application, Judge. Okay. I can submit one to the Court. Following the hearing, if you would like to proceed on the merits. Well, let me rephrase the question. I mean, if we decided the case your way, if we said the RPO conflicts with the Federal standards, what difference would it make to anything? The difference is that the second application, which you just referenced, would have to proceed, and the RPO would not apply, because it would be preempted by the conflicts of the amendment. Well, as I read it, the County, the last thing in the letter, the last thing in the record, is a letter from the County saying that it's going to resolve the first application based on the Federal standard. Is there anything to indicate that the County has backtracked from that and that it wouldn't measure whatever application you have pending by the Federal standard? That's a letter of March 28, 1995. There is a letter indicating that. The County did not act upon that. And no, Your Honor, there's nothing in the record that indicates that the County will refuse to do so, but nine years have now gone by since that letter and that the action of the County has been based on administrative reasons and not upon its refusal to apply the swamp buster definition of that letter. Well, in that case, why is there something live before us to adjudicate? Because if that second application proceeds and the County applies the RPO definition of wetlands, then it will improperly have done so as a consequence of the second application. Why shouldn't we wait to see if that happens? There's every indication from the record and the way the County proceeded on the first application that it will apply the wetlands definition of the RPO in the second application, which is currently pending. But it said in March, the last thing, the last word on the subject is March 28, 1995, where they say they'll measure the application by the Federal standard. I apologize, Your Honor, there is nothing in the record subsequent to 1995 in which the County indicates either way that it will apply the RPO definition or the swamp buster definition. And I can look through the record again. That's fine. I don't think there is. Would you like me to proceed with the merits? Sure. This case involved the novel question of whether the federal swamp buster amendment preempts, through the supremacy clause of the U.S. Constitution, a San Diego County ordinance which renders portions of Carl Tersex and the Cumbah Valley Ranch to be wetlands which cannot be developed. The district court held the doctrine of preemption does not apply because the swamp buster was enacted under the Constitution's spending clause, rather than its commerce clause. In so holding, the district court committed legal error. Congress enacted the swamp buster pursuant to its powers under either the commerce clause or the property clause, but not the spending clause. The spending clause cannot be the constitutional basis of the swamp buster amendment for a couple of reasons. First, the spending clause authorizes Congress to enact legislation to influence the behavior of states, not individuals. The enumerated powers of the Constitution grant Congress the authority to directly compel an individual to engage in a given behavior, but do not grant Congress the authority to directly compel a state to do the same. Did you get a message from the clerk of the court that you were expected to discuss jurisdiction in this case? I did not. And something happened, apparently, in the mailroom. You didn't get it. Nothing. Well, could you tell me how, what is the case or controversy that gives an Article III court any jurisdiction? We don't go around issuing advisory opinions on what might happen if somebody, if events turned out in one way or another. We have to know what is the case or controversy between the litigants in this case. The district judge wrote an interesting opinion about the spending clause and so forth, but he apparently accepted jurisdiction on the theory that you were facing an immediate denial of a building permit or something. It now turns out that we don't have anything in the record that shows that you were facing any adverse action on the part of the county at all. I understand the issue, Judge. I can, I did not receive any letter from the clerk of court. I can brief the issue of jurisdiction if you'd like, and then we can return at some later date. Because I'm not prepared to speak on the issue comprehensively right now. I don't want to hear it twice. No, it won't be necessary. We can dispose of this case on the present record, I think. There may very well, Judge, be in the record somewhere that I did not, there may be documents that I did not submit in this portion of the record which indicate that the county in fact intends to apply the RPO definition of wetlands that I just did not include in this record because I was not aware that jurisdiction was going to become an issue. Well, let me ask you a question on the merits. Obviously, the only preemption theory that's at issue is conflict preemption. The federal standard doesn't have any obligatory or regulatory effect at all. It simply says you're not going to get money if you go ahead and do something. If you go ahead and farm on wetlands, you're not going to get benefits you might otherwise get. It doesn't tell you not to farm on wetlands or anything. Correct. So, what's conflict? Well, our position, Judge, is that the federal legislation, the swamp buster, has a dual purpose, a dual objective. The first objective is to preserve wetlands. And the second objective is to preserve the right of the landowner to do as he or she wishes with his or her property. And so, if you consider that second objective as well as the first objective, the RPO conflicts with that in that it issues a mandate, whereas the federal legislation, the swamp buster, intends to strike a balance. So, the RPO does away with that balance. It says to the landowner, you're not permitted to make that decision, whereas the federal legislation says you are permitted to make that decision. So, the objective of the swamp buster is not merely to preserve the wetlands. It's to preserve wetlands and preserve property owner choice. And if you see it in that way, you can see how any mandate that the county might issue would be in conflict with that objective, with those dual objectives. And there's ample evidence in the record that in the legislative history and in the text of the statute itself, which indicates that that second objective does, in fact, exist. One of those being the comment by Senator Warner. One of those being the many exceptions that are in the swamp buster itself. So, the RPO is an obstacle to the full objectives of the congressional enactment in that it does one of these two. It either works a total ban on the federally promoted activity, which is both the preservation of wetlands and the preservation of the right to choice by the landowner, and or it is not reasonably related to any legitimate local concern. And this is so because, number one, it flatly prohibits the landowner from using wetlands for any purpose other than aquaculture, restoration, education, recreation, or scientific research. This prohibition strips the landowner of the right to choose what to do with his land given to him by the swamp buster. It also has the effect of prohibiting Mr. Teresek's development of his land without legitimate reason because it resulted in the denial of his application for administrative reasons. In fact, the government, through the EPA, as we discussed before, has indicated that the property is not wetland and is not in need of protection under the Resource Conservation and Recovery Act. And finally, it has the effect of prohibiting the development without legitimate concern in that it took the county 12 years before it denied his permit application. And if this court looks at its decision in Hydro Sales, it can see that process delay was, in fact, obstructionist and is considered, in fact, obstructionist. And that court had no qualms at all about striking down a local or state law based on an excessive delay, which coincidentally happened to be the exact same 12 year period as the county in this case waited. Do you want to save the rest of your time? I reserve the balance of my time. All right. Ms. Pilsaker. Good morning. Ellen Pilsaker for the County of San Diego. In answer to your preliminary question, there is no new ordinance. No new ordinance. That's correct. The Resource Protection Ordinance that's in the record is still the county's ordinance. There is no new application in the record. I'm not aware of any. And finally, I did receive notice from the court indicating what you were interested in hearing this morning. Well, when you say there's no new application, there was an original application which was denied in 2003, I think. That's correct. Yes. Okay. Then there was the district court made reference to an application. I keep thinking orchard. Maybe I'm wrong in my memory, but I think that's what it was for, was to do some kind of an orchard. Is that application still pending or has it been resolved? Your Honor, my understanding is that that has to do with a different parcel of land owned by Mr. Turajan. Well, I don't know. But whether it's a different parcel of land or not wouldn't necessarily make any difference, would it? I mean, is it subject to the same regime? I have no information on that. It may well not have any property that's considered wetlands under the county's ordinance. So that would be the case. And there's nothing in the record that shows whether it is or isn't? That's correct. Your Honor, it is the county's position that this case should have been dismissed from the outset because there is no Article III case or controversy. In particular, there has been no injury in fact. Now, we made this argument to the district court, and we were unsuccessful. But the district court found that there was a threat of enforcement. And specifically, the court relied on the September 1994 letter that's contained in the excerpt of record, pages 1 through 3, indicating that that was a threat of enforcement. However, that letter simply referred to the fact that the Resource Protection Ordinance could apply and that Mr. Cherchek needed to look at that. Yeah, well, I mean, that's another way to look at it. But I mean, why isn't this thing just moot also? Your Honor, I believe that it is. I think initially there was no injury in fact because of the 95 letter saying on the first application that the county was willing to accept the federal determination as to what property was to be considered wetlands. And that's narrower than the county's definition. So even if that application had still been alive, the only information in the record is the county was going to agree to use the narrower definition.  Secondly, after the lawsuit was filed, that application was denied for reasons totally unrelated to the Resource Protection Ordinance. At that point, we did argue that on summary judgment that the case was moot. There was nothing that the court needed to look at. As I said, the district court relied on its prior analysis on the motion to dismiss and looked particularly to the 1994 letter. There was also some information in the record provided by Mr. Terchik where he submitted declarations. And one of his declarations indicated that he was farming the land already. And so if the Resource Protection Ordinance were to apply, he would no longer be permitted to farm the land. That's not correct. The Resource Protection Ordinance has an exemption for ongoing existing agricultural operations. That's in the Exhibit 1 to Terchik's brief, page 814, paragraph 10. So to the extent that wetlands were being used for agriculture, they would continue to be used for agriculture. There would be no impact. The district court did feel, however, that given the existence of the ordinance and the county's letter indicating that the ordinance applied to a then-existing application, that there was a legitimate threat of prosecution, and that's what the court relied upon. I think this is different, however, from the normal cases where you have a legitimate threat of prosecution. Because Mr. Terchik did not have to change his behavior in order to avoid some kind of prosecution under the ordinance. Apparently, based on his original application, he would have to make some modification to his development to comply with the ordinance. But once that application had been decided on a different basis, there was nothing pending on which the ordinance could possibly apply. There is no effect. And the problem we have with the record, in terms of seeing that there is some kind of existing controversy, is we have no current application. So we don't know if what Mr. Terchik wishes to do with this property in the future would in any way be altered by the provisions of the Resource Protection Ordinance. Moving briefly to the merits of the case, whether or not the swamp buster provisions were enacted under the spending clause, and I believe it's clear that they were, there's simply no conflict here between the Resource Protection Ordinance and the swamp buster provisions. The federal law was enacted, these particular provisions, to protect wetlands. There are consequences to a landowner if he or she uses those wetlands for agriculture. They lose subsidies. Similarly, with respect to the Resource Protection Ordinance, it was enacted to protect sensitive lands, including wetlands. The dual purpose is not found in the statute, it's really not found in the legislative history, and it's not backed up by any case law. So I think it's very clear that the federal law and the Resource Protection Ordinance are parallel. They are in agreement. So there is no reason to find preemption, even if the court is inclined to get that far. If push came to shove and the county wanted to deny any use of a particular estuary flat land or wetland, is there anything in the federal statute that would prevent the county from exercising its legislative authority over that wetland? Like what we have up at Tahoe, for instance. The courts have said that the county can pretty much confiscate riparian land anytime it wants to. And... There is no particular limit in the federal law, but there is protection in the RPO, that if there is a determination that strictly enforcing the Resource Protection Ordinance  the board has the discretion to not apply the Resource Protection Ordinance. So if we're looking at a situation where there would essentially be a taking, then there's an exemption for that in the county's ordinance. But it's your position that that's so far down the road in this case that we don't need to reach it? That's correct, Your Honor. There's nothing in the record that would support any such problem of taking. Okay. Thank you. Counsel, Mr. Zarin? First of all, with respect to mootness, that issue was never raised by the county in any cross-appeal. That doesn't make a difference. It's our jurisdiction. It's our problem. It is a problem in a sense, Judge, but I believe that the jurisdictional issue this Court can raise, but the mootness issue this Court... That's jurisdictional. If something's moot, it isn't alive and well. That means we can't have jurisdiction. And secondly, I would request the Court to permit appellant to brief the issue of jurisdiction and mootness and supplement the record with respect to the question of whether the county has any intention of applying the RPO's definition of wetlands. Okay. The notice to limit or to focus on jurisdictional was filed in San Francisco on the last day of January, or January 28th. Now, the county got their copy of the notice. I don't know what happened to yours, but... I apologize. I'm not aware either. I will look in my mail room, but I did not receive it. Okay. Is there anything else on the argument? No, Judge. Okay. Thank you. The matter just argued will be submitted. And we'll next hear argument in Edwards v. County of San Diego. Mr. Loftus. Good morning, Your Honors. Don Loftus for the plaintiff appellant, Amy Edwards. Having had a year...
judges: Goodwin, Magill, Rymer